## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF PENNSYLVANIA

IN RE                              :
                                   :        **Chapter 13**
**VICTOR ALAN MILBOURNE**          :
                                   :
                    **DEBTOR**     :
_____    :        **Case No. 14-16411-AMC**

Ashely M. Chan, United States Bankruptcy Judge

### OPINION

## I.    INTRODUCTION

The Debtor in this proceeding purchased a condominium unit fourteen years ago and, for the past eight years, failed to consistently and timely pay monthly condominium assessments and related charges required under the condominium's governing documents. By his own admission, the Debtor also filed patently unconfirmable plans and made material misstatements regarding the Debtor's delinquency to the condominium association in this bankruptcy proceeding. In order to protect its lien on the condominium unit, the condominium association was forced to take various legal actions against the Debtor.

The Debtor now objects, *inter alia*, to the condominium's pre- and post-petition late charges and the majority of its pre- and post-petition attorneys' fees and costs. As discussed below, the Court ultimately has concluded that the condominium association was not permitted under its governing documents to impose late charges against the Debtor, but did have a claim for the majority of its pre- and post-petition attorneys' fees and costs, although the Court has limited the amount of allowed reasonable post-petition attorneys' fees and costs to the equity in the Unit as required under § 506(b).

- 1 -

## II.    FACTS AND PROCEDURAL HISTORY

On May 29, 2002, the Debtor purchased Unit 17 of Williamsburg Commons ("Unit"), a

condominium located at 533 Williamsburg Way in King of Prussia, Pennsylvania. Hr'g on Obj.

to Claim No. 6 ("Hr'g on Obj."), Claimant's Ex. 1B ("Deed"), at 1, Nov. 17, 2015. As the owner

of a Williamsburg Commons unit, the Debtor belongs to the Unit Owners Association, which is

known as the Williamsburg Commons Condominium Association ("WCCA"), a Pennsylvania

non-profit corporation. Hr'g on Obj., Claimant's Ex. 1 ("Declaration"), § 2.2.a. The Debtor is

therefore subject to the Uniform Condominium Act, 68 Pa. Stat. and Cons. Stat. Ann. §§ 3101–

414 (West 2016) ("UCA"), the Declaration of Condominium for Williamsburg Commons

("Declaration"), and the Bylaws of Williamsburg Commons Condominium Association

("Bylaws").

### A.    Pre-Petition Activity

On or about June 2, 2003, the Debtor executed a note and mortgage against the Unit in

favor of Irwin Mortgage Corp. ("Irwin") in the amount of $193,450 ("First Mortgage"). Mot. of

CitiMortgage, Inc. for Relief ("CitiMortgage Mot.") Ex. B, ECF No. 95. On December 12, 2011,

Irwin assigned the First Mortgage to CitiMortgage, Inc. ("CitiMortgage"). *Id.*

The Debtor executed a second note and mortgage against the Unit in favor of Wachovia

Bank, N.A. ("Wachovia"), in the amount of $92,516 ("Second Mortgage") on July 28, 2005.

Debtor's Second Suppl. Mem. Supp. Objs. to Claims ("Debtor's Second Suppl. Mem.") Ex. B,

ECF No. 109. Wells Fargo Bank, N.A. ("Wells Fargo"), later became the successor by merger

with Wachovia to the Second Mortgage. WCCA's Second Suppl. Mem. Opp'n Objs. ("WCCA's

Second Suppl. Mem.") Ex. A, ECF No. 113.

- 2 -

In March 2008, the Debtor allegedly stopped regularly paying monthly and special assessments that he owed to WCCA as required by the Declaration.[1] *Id.* at 2. It also appears that, by October 2009, the Debtor also allegedly stopped regularly paying the monthly installments due on the loan secured by the Second Mortgage. Claim 7-1, Claims Register, Bankr. No. 10-31122-bif.

At some point thereafter, foreclosure proceedings were initiated against the Unit in connection with the Second Mortgage and a sheriff's sale was ultimately scheduled. Hr'g on Obj. Claimant's Ex. 4. WCCA, through its outside general counsel, Gilbert E. Toll ("Mr. Toll"), began monitoring the foreclosure proceedings and the sheriff's sale, which was continued on multiple occasions. *Id.*

Before the sheriff's sale was conducted, the Debtor and his wife, Cynthia Milbourne, jointly filed a Chapter 13 Voluntary Petition, ECF No. 1, Bankr. No. 10-31122-bif, on December 29, 2010. William C. Miller was appointed as the Chapter 13 Trustee ("Trustee") in that case ("2010 Bankruptcy"). On January 25, 2011, Wells Fargo filed a proof of claim, which it later amended twice, for the loan secured by the Second Mortgage. Claim 7-1, Claims Register, Bankr No. 10-31122-bif. WCCA also filed a proof of claim for the delinquent monthly and special assessments, which were secured by a lien against the Debtor's Unit as established by UCA and the Declaration, on February 10, 2011.[2] Claim 8-1, Claims Register, Bankr. No. 10-31122-bif.

---

[1] As a member of WCCA, the Debtor was required to pay "monthly assessments" for "common expenses" of Williamsburg Commons, and certain "special assessments" for "limited common expenses." Declaration §§ 2.2.c, .e, 13.1. Special assessments were set by the WCCA Executive Board ("Board") as necessary to offset annual budget shortfalls and oversights, including the non-payment of an assessment by a unit owner. *Id.* § 13.5. Monthly and special assessments were due on the first day of each month and accrued interest at a limited rate from the tenth day thereafter. *Id.* §§ 13.1, 13.8.

[2] Section 3315(a) of UCA establishes that WCCA "has a lien on a unit for any assessment levied against that unit or fines imposed against its unit owner from the time the assessment or fine becomes due." UCA § 3315(a).

On July 14, 2011, Wells Fargo filed a Motion for Relief from Automatic Stay Under

§ 362(a) ("Wells Fargo Motion"), ECF No. 61, Bankr. No. 10-31122-bif, to, *inter alia*, resume

the foreclosure proceedings on the Second Mortgage and the sheriff's sale of the Debtor's Unit.

Wells Fargo alleged in the motion that the Debtor owed post-petition arrears of $3,316.81 under

the Second Mortgage and, as a result, failed to adequately protect Wells Fargo's interest in the

Unit. Wells Fargo Mot. ¶¶ 6, 8. Wells Fargo and the Debtor subsequently filed a Settlement

Stipulation, ECF No. 83, Bankr. No. 10-31122-bif, on September 21, 2011.[3] An Order Granting

Settlement Stipulation, ECF No. 87, Bankr. No. 10-31122-bif, was entered on September 26,

2011. However, the Debtor and his wife subsequently defaulted under the Settlement Stipulation

and, on November 3, 2011, the Court entered another Order, ECF No. 93, Bankr No. 10-31122-

bif, which granted the Wells Fargo Motion.

On November 4, 2011, Glenn A. Manochi ("Mr. Manochi") entered his appearance in the

2010 Bankruptcy and filed Objections to Debtors' Second Amended Chapter 13 Plan, ECF No.

95, Bankr No. 10-31122-bif, on behalf of WCCA.[4] Mr. Manochi alleged therein that the Debtor

and his wife owed $2,904.36 in post-petition arrears to WCCA for unpaid monthly and special

---

Declaration § 13.12 establishes that if the Debtor violates any provisions of UCA, the Declaration, the Bylaws, or any rules and regulations adopted by the Board, WCCA and the Board

> may prosecute an action or other proceedings against such defaulting Unit Owner and/or others for enforcement of any lien . . . . All expenses of the Executive Board in connection with any such actions or proceedings, including court costs and attorneys fees . . . shall be charged to and assessed against such defaulting Unit Owner . . . *and the Association shall have a lien for all of the same, as well as for nonpayment of the respective share of the Common Expenses*, upon the Unit.

Declaration § 13.12 (emphasis added).

[3] Mr. Toll, who had been monitoring the Debtor's 2010 Bankruptcy, contacted Wells Fargo's counsel to request that it modify the Settlement Stipulation to "accommodate" the post-petition arrears that the Debtor owed to WCCA, on September 23, 2011. Hr'g on Obj. Claimant's Ex. 4.

[4] The Debtor and his wife had filed a Chapter 13 Plan, ECF No. 21, Bankr. No. 10-31122-bif, on January 25, 2011; an Amended Chapter 13 Plan, ECF No. 86, Bankr. No. 10-31122-bif, on September 22, 2011; and a Second Amended Chapter 13 Plan, ECF No. 89, Bankr. No. 10-31122-bif, on October 18, 2011.

assessments. *Id.* ¶ 6. Among the listed objections were, *inter alia*, the plan's failure to specify the monthly amount that the Debtor would pay to satisfy the pre-petition arrears that he owed to WCCA; to pay in full, pre-confirmation, the post-petition arrears that the Debtor owed to WCCA; and to provide superior treatment to WCCA, a senior lienholder, relative to Wells Fargo, a junior lienholder.[5] *Id.* ¶¶ 7–8, 13.

Also on November 4, 2011, Mr. Manochi filed a motion on behalf of WCCA to join in the Trustee's motion to dismiss the Debtor's 2010 Bankruptcy based, in part, on the Debtor's failure to pay post-petition arrears to WCCA. Joinder in the Mot. to Dismiss ¶ 1, ECF No. 96, Bankr. No. 10-31122-bif. On November 15, 2011, the court held hearings on the confirmation of the plan and the Trustee's motion to dismiss and decided to deny confirmation of the plan and permit the Trustee to withdraw the motion to dismiss without prejudice. However, the Trustee filed another motion to dismiss the 2010 Bankruptcy on December 23, 2011, which the court ultimately granted on January 17, 2012.

In either April or May 2012, WCCA, through Mr. Toll, filed a complaint against the Debtor to collect the delinquent assessments that the Debtor owed to WCCA. Hr'g on Obj. Claimant's Ex. 4. Shortly thereafter, WCCA filed a motion for default judgment against the Debtor. *Id.* Although WCCA and the Debtor agreed to a payment plan on July 23, 2012, the Debtor apparently fell out of compliance with the plan by October 16, 2012. *Id.*

Subsequently, CitiMortgage and Wells Fargo separately maintained foreclosure proceedings on their respective mortgages on the Debtor's Unit. Mr. Toll monitored each of the

---

[5] Section 3315(b)(1) of UCA provides that WCCA's lien "is prior to all other liens" except those "recorded before the recordation of the declaration"; "[m]ortgages . . . securing first mortgage holders and recorded before the due date of the assessment"; "[j]udgments obtained for obligations secured by [such] mortgages"; and "[l]iens for real estate taxes and other governmental assessments or charges against the unit." UCA § 3315(b)(1).

foreclosure proceedings on behalf of WCCA. *Id.* On January 3, 2013, the Debtor finally satisfied

the Second Mortgage. WCCA's Second Suppl. Mem. Ex. A. As evidence thereof, Wells Fargo

recorded a Satisfaction of Mortgage in the Recorder of Deeds Office in Montgomery County. *Id.*

**B.    Post-Petition Activity**

On August 8, 2014 ("Petition Date"), the Debtor filed a Chapter 13 Voluntary Petition,

ECF No. 1, and commenced this bankruptcy case. William C. Miller was again appointed as the

Chapter 13 Trustee. David A. Scholl entered his appearance on behalf of the Debtor on

September 9, 2014, and filed a Chapter 13 Plan of the Debtor ("Chapter 13 Plan"), ECF No. 19,

on September 16, 2014.

Mr. Manochi entered his appearance on behalf of WCCA on October 24, 2014, and filed

a proof of claim against the Debtor for $16,112.05 ("Proof of Claim") on November 26, 2014.

Claim 6-1, Claims Register. WCCA's Proof of Claim reflected WCCA's pre-petition claims

described above which included: $7,389.00 of monthly assessments, $950.00 of special

assessments, $380.00 of late fees, $35.64 of other fees, and $7,357.41 of attorneys' fees and

costs billed by Mr. Toll and Mr. Manochi. Hr'g on Obj. Claimant's Ex. 4.

On January 8, 2015, Mr. Manochi filed objections to the Debtor's Chapter 13 Plan on

behalf of WCCA. Objs. to Debtor's Chapter 13 Plan ("Objs. to Plan"), ECF No. 37. Among the

listed objections were, *inter alia*, the plan's failure to: pay the pre- and post-petition arrears owed

to WCCA; prioritize the payment of the most recent six months of fees and assessments over the

payment of the First Mortgage pursuant to UCA § 3315(b)(2)(i); prioritize the payment of all

other months' fees and assessments over the payment of all liens and encumbrances other than

first mortgages and liens for governmental assessments pursuant to § 3315(b)(2)(ii); and provide

liens of corresponding priority on the Debtor's Unit to WCCA.[6] *Id.* ¶¶ 8, 10–14.

On February 6, 2015, the Debtor filed a complaint against WCCA under Bankruptcy

Code § 506(a) "to avoid [its] totally unsecured lien" on the Debtor's Unit ("Adversary

Complaint"). Compl. ¶¶ 1, 8, ECF No. 1, Bankr. No. 14-16411, Adv. No. 15-00045. The Debtor

asserted that the First Mortgage exceeded the Unit's alleged value of $200,000.00, according to

the Debtor, such that the Unit retained no equity to secure WCCA's Proof of Claim.[7] *Id.* ¶¶ 5–8.

Mr. Manochi filed an answer on behalf of WCCA in which it asserted that the Unit's value was

"much greater than $200,000.00 and exceeds the value of all liens against it," on March 11,

2015. Answer ¶ 6, ECF No. 4, Bankr. No. 14-16411, Adv. No. 15-00045. The deadline to submit

expert appraisal reports of the value of the Debtor's Unit in the Adversary Complaint proceeding

("Adversary Proceeding") was June 15, 2015. Pretrial Order ¶ 6(b), ECF No. 5, Bankr. No. 14-

16411, Adv. No. 15-00045.

---

[6] Section 3315(b)(2) of UCA states that WCCA's lien is divested upon a judicial sale:

> (i) As to unpaid common expense assessments . . . that come due *during the six months immediately preceding the date of a judicial sale* of a unit in an action to enforce collection of a lien against a unit by a judicial sale, *only to the extent that* the six months' unpaid assessments are paid out of the proceeds of the sale.

> (ii) As to unpaid common expense assessments . . . *other than the six months assessment* referred to in subparagraph (i), in the full amount of these unpaid assessments, whether or not the proceeds of the judicial sale are adequate to pay these assessments. To the extent the proceeds of the sale are sufficient to pay some or all of these additional assessments . . . *they shall be paid before any remaining proceeds may be paid to any other claimant*, including the prior owner of the unit.

UCA § 3315(b)(2) (emphasis added).

[7] On December 10, 2014, CitiMortgage filed a proof of claim against the Debtor for $217,084.35, for the loan secured by the First Mortgage. Claim 8-1, Claims Register. The Debtor allegedly stopped regularly paying the monthly installments due on the loan secured by the First Mortgage such that thirty-five installments were past-due by August 2014. *Id.* Ex. A-1.

Also on February 6, 2015, the Debtor filed an Amended Chapter 13 Plan ("Amended

Plan"), ECF No. 39. The Debtor, however, allegedly had not paid any post-petition assessments

or fees that he owed to WCCA. Mot. for Payment of Post-Petition Fees ("Mot. for Payment")

¶ 8, ECF No. 44. Mr. Manochi therefore filed a motion on behalf of WCCA to, *inter alia*,

compel "the immediate payment" by the Debtor of all such post-petition fees and assessments

"prior to the confirmation of the Debtor's plan," on March 12, 2015. *Id.* ¶ 10. He argued that

such assessments and fees were "administrative expenses" under Bankruptcy Code § 503(b),

which the Debtor was required to pay pre-confirmation under § 1326(b)(1). *Id.* ¶¶ 5–6. On

March 20, 2015, Mr. Manochi filed objections to the Amended Plan on behalf of WCCA that

also alleged, *inter alia*, that the Debtor had not paid any post-petition assessments or fees. Objs.

to Debtor's Am. Plan ¶ 6, ECF No. 46.

On March 24, 2015, the Debtor filed an answer to WCCA's motion and indicated that he

was "ready, willing, and able" to pay the delinquent post-petition assessments and fees "and

thereafter make regular payments." Answer to Mot. for Payment of Post-Petition Fees ¶ 3, ECF

No. 47. The Debtor then filed a Second Amended Chapter 13 Plan, ECF No. 48, on March 27,

2015. Although WCCA withdrew its motion on May 7, 2015, Mr. Manochi filed objections to

the Second Amended Plan on its behalf on May 13, 2015, in which it again alleged that, *inter*

*alia*, the Debtor had not paid any post-petition assessments or fees. Objs. to Debtor's Second

Am. Plan ¶ 6, ECF No. 59.

The Debtor filed a Third Amended Chapter 13 Plan ("Third Amended Plan"), ECF No.

60, on May 17, 2015, and Mr. Manochi filed Objections to Debtor's Third Amended Plan, ECF

No. 64, on August 4, 2015, on behalf of WCCA. The Debtor alleged in the Third Amended Plan

that he had "paid all post-petition fees" that he owed to WCCA, but WCCA maintained that the

Debtor had failed to pay "$9,860.44 in post-petition assessments." Third Am. Plan ¶ 3.D; Objs. to Debtor's Third Am. Plan ¶ 6. The Debtor filed a Fourth Amended Chapter 13 Plan ("Fourth Amended Plan"), ECF No. 65, on August 8, 2015, in which he reaffirmed that no amount of post-petition fees remained due to WCCA. Fourth Am. Plan ¶ 3.D. However, at a confirmation hearing held on August 11, 2015, the Debtor later admitted that his representations in the Third Amended Plan and Fourth Amended Plan were false. Objs. to Debtor's Sixth Am. Plan ¶ 31, ECF No. 85.

In each of the Debtor's first five Chapter 13 plans, the Debtor maintained that if he successfully avoided the liens that allegedly secured WCCA's pre-petition claims against the Unit in the Adversary Proceeding, then the claims would be discharged as unsecured. *E.g.*, Fourth Am. Plan ¶ 3.D. However, WCCA submitted an expert appraisal report on July 24, 2015 ("Appraisal"), which valued the Debtor's Unit at $263,000 as of the Petition Date.[8] Def.'s Resp. to Pl.'s Voluntary Dismiss Mot. ("Def.'s Resp.") ¶¶ 3–4, ECF No. 17, Bankr. No. 14-16411, Adv. No. 15-00045. WCCA argued that the Appraisal proved that the Unit retained sufficient equity to pay all of WCCA's pre-petition claims and therefore supported WCCA's priority liens against the Unit. Objs. to Debtor's Fifth Am. Plan ¶ 21, ECF No. 76; Objs. to Debtor's Sixth Am. Plan ¶ 27, ECF No. 85.

On August 18, 2015, seemingly in response to the Appraisal, the Debtor filed the instant Objections to Proof of Claim ("Objections"), ECF No. 71, in which he argued that the amounts claimed by WCCA were "grossly inflated by unreasonable late charges and . . . exorbitant and unnecessary legal fees." Objs. ¶ 5. The Debtor asserted that, as a result, he only owed the pre-

---

[8] On July 15, 2015, the Court granted a stipulation between the Debtor and WCCA to extend the deadline to file expert appraisal reports in the Adversary Proceeding. Order, ECF No. 13, Bankr. No. 14-16411, Adv. No. 15-00045. The Debtor did not submit a report to refute WCCA's Appraisal. Def.'s Resp. ¶ 6.

and post-petition monthly assessment arrears to WCCA, which amounted to $7,356 and $820,

respectively. *Id.* ¶¶ 3–4.

The Debtor also filed a Fifth Amended Chapter 13 Plan ("Fifth Amended Plan"), ECF

No. 73, on August 22, 2015, and a Sixth Amended Chapter 13 Plan ("Sixth Amended Plan"),

ECF No. 80, on October 3, 2015. In each, the Debtor acknowledged that the Adversary

Proceeding was going to be dismissed in light of the Appraisal. Fifth Am. Plan ¶ 3.D; Sixth Am.

Plan ¶ 3.D. Mr. Manochi filed objections to the Fifth Amended Plan and Sixth Amended Plan on

behalf of WCCA on September 22, 2015, and November 10, 2015, respectively.

Although the Debtor twice requested that WCCA agree to proposed stipulations to

voluntarily dismiss the Adversary Complaint, WCCA took the position that it would only

consent to the dismissal if, "for the purposes of Debtor's bankruptcy proceeding, the parties

agree the value of the Debtor's Unit is $263,000." Pl.'s Mot. to Voluntarily Dismiss Proceeding

("Pl.'s Mot. to Dismiss") ¶ 6, ECF No. 15, Bankr. No. 14-16411, Adv. No. 15-00045; Def.'s

Resp. ¶ 9. The Debtor refused. Def.'s Resp. ¶ 10.

On October 19 2015, the Debtor filed a motion to voluntarily dismiss the Adversary

Complaint, in which he again admitted that "he could not successfully maintain" the Adversary

Proceeding in light of the Appraisal. Pl.'s Mot. to Dismiss ¶ 4. On November 6, 2015, Mr.

Manochi filed a response on behalf of WCCA in which it requested that, if the Court granted the

motion, it also determine that the Unit's value is $263,000. Def.'s Resp. ¶ 14. The Court granted

the Debtor's motion on November 17, 2015, but, under the circumstances, declined to determine

the Unit's value. Order Granting Pl.'s Mot. to Dismiss, ECF No. 19, Bankr. No. 14-16411, Adv.

No. 15-00045.

On November 17, 2015, the Court also held a hearing on the Debtor's Objections. At the

hearing, Mr. Manochi presented various exhibits on behalf of WCCA, including pre-petition bills

as well as post-petition bills through November 11, 2015, and a statement of the Debtor's

account as of November 11, 2015. Through the exhibits, Mr. Manochi sought to substantiate

WCCA's Proof of Claim and also the post-petition claims described above, which included

$1,085.00 of monthly assessments, $375.00 of late fees, $50.00 of other fees, and $21,134.77 of

attorneys' fees and costs billed by Mr. Toll and Mr. Manochi. Hr'g on Obj. Claimant's Ex. 5.

The Debtor filed a Memorandum in Support of Debtor's Objections ("Debtor's

Memorandum"), ECF No. 91, on December 6, 2015, and Mr. Manochi filed a Memorandum in

Opposition to Debtor's Objections ("WCCA's Memorandum"), ECF No. 92, on December 7,

2015, on behalf of WCCA. The Debtor argued that only the pre-petition monthly assessments

and $618.19 of WCCA's pre-petition attorneys' fees and costs—those related to WCCA's state

court action against the Debtor—were due and compensable.[9] Debtor's Mem. 7–8. The Debtor

conceded no special assessments, late fees, other fees, or post-petition amounts that WCCA

claimed at the prior hearing. *Id.* at 3–7.

---

[9] The Debtor asserted that the pre-petition monthly assessments totaled $7,349.00, which was "the sum of
the first five entries" of the pre-petition bills submitted by WCCA at the hearing on November 17, 2015. Debtor's
Mem. 3. The Debtor also asserted that WCCA agreed to the foregoing via email on December 2, 2015, but insisted
upon "special assessments and a fine, of which the Debtor is unaware and therefore cannot agree is due." *Id.* at 3–4.
The Debtor submitted a copy of the above-referenced email to the Court, which substantiates the foregoing
assertions. Suppl. Mem. Ex. A, ECF No. 94. The figure quoted by the Debtor as the total pre-petition assessments
due, however, is less than the sum of the pre-petition assessments that WCCA listed in the pre-petition bills, which
is $7,389.00, according to the Court's calculations. Hr'g on Obj. Claimant's Ex. 4. Moreover, in the email, Mr.
Manochi asserted that "the non-legal pre-petition amounts due are $8,754.64," which matches the sum of the non-
legal pre-petition bills he submitted at the hearing notwithstanding the pre-petition assessments that the Debtor
asserted totaled only $7,349.00. Suppl. Mem. Ex. A; Hr'g on Obj. Claimant's Ex. 4. The Court therefore rejects the
Debtor's calculation of the pre-petition monthly assessments and finds that the total pre-petition monthly
assessments equal $7,389.00.

The Debtor also miscalculated the total of WCCA's attorneys' fees and costs that he listed as compensable. The
correct total is $618.69. Hr'g on Obj. Claimant's Ex. 4.

The Debtor also alleged that he needed to resolve WCCA's pre-petition security interests in the Unit because it was "the principal impediment" to a loan modification that he was negotiating. *Id.* at 2. "For this reason," the Debtor had proposed on multiple occasions to pay a "lump sum" to WCCA to resolve its pre-petition claims. *Id.* WCCA, however, had rejected all such offers and had proposed no counteroffers. *Id.*

On December 8, 2015, the Court continued the hearing again to February 9, 2015, and ordered the Debtor and WCCA to submit supplemental and responsive briefing on the issues of late fees and attorneys' fees and costs. The Debtor filed a Supplemental Memorandum ("Debtor's Supplemental Memorandum"), ECF No. 94, on December 17, 2015; Mr. Manochi filed a Supplemental Memorandum ("WCCA's Supplemental Memorandum"), ECF No. 97, on January 8, 2016, on behalf of WCCA; and the Debtor filed a Memorandum in Reply ("Debtor's Reply Memorandum"), ECF No. 102, on January 15, 2016.[10]

On February 9, 2016, the Court concluded its hearing on the Debtor's Objections. At the hearing, Mr. Manochi presented additional exhibits on behalf of WCCA, including post-petition bills incurred after the first day of the hearing on November 17, 2015, and a statement of the Debtor's account as of February 4, 2016. Through the additional exhibits, Mr. Manochi sought to substantiate the remaining post-petition claims described above, which included $75.00 of late fees and $13,450.73 of attorneys' fees and costs billed by Mr. Toll and Mr. Manochi. Hr'g on Obj. Claimant's Exs. 10–11. "The Debtor opposed any attempt to reopen the record on the Objections at that juncture," but the Court permitted Mr. Manochi to submit the additional exhibits. Debtor's Second Suppl. Mem. 3.

---

[10] Meanwhile, on December 29, 2015, CitiMortgage filed a motion for relief from the automatic stay to maintain foreclosure proceedings on the First Mortgage. CitiMortgage Mot. ¶ 11. The Debtor filed an Answer, ECF No. 99, on January 11, 2016, and CitiMortgage filed a Praecipe to Withdraw, ECF No. 118, on March 30, 2016.

The Court then ordered the Debtor to submit any line item objections to WCCA's claims by March 1, 2016, and WCCA to submit any responses by March 15, 2016. After the final round of supplemental briefing, the Debtor largely maintained his previous positions, but conceded the pre-petition special assessments and other fees to WCCA that he previously denied were due. *Id.* at 11. The Debtor therefore requested that the Court reduce WCCA's Proof of Claim to the sum of the pre-petition monthly assessments, special assessments, other fees, and attorneys' fees and costs related to WCCA's state court action against the Debtor: $8,993.33.[11] *Id.*

WCCA, however, maintained that it was due the full amount of its pre-petition Proof of Claim. WCCA's Second Suppl. Mem. 13. WCCA also requested that the Court "set [its] post-petition claim at $35,585.50 as of February 4, 2016."[12] *Id.* The total requested by WCCA is $51,796.55.[13] *Id.* at 2. WCCA finally requested that the Court award it "15% interest on its post-petition attorneys' fees and costs," pursuant to Declaration § 13.12. *Id.* at 12–13.

Meanwhile, the Debtor filed a Seventh Amended Chapter 13 Plan, ECF No. 98, on January 10, 2016, and an Eighth Amended Chapter 13 Plan, ECF No. 104, on January 24, 2016. The Debtor thus filed a total of nine Chapter 13 plans as of the filing of WCCA's final memorandum on this matter, and a tenth thereafter. WCCA asserts that none of the plans

---

[11] The Debtor erroneously asserted that the conceded amounts totaled $8,992.85. Although the Debtor apparently corrected his previous miscalculation of the pre-petition monthly assessments, he apparently did not correct his previous miscalculation of the conceded attorneys' fees and costs. The Debtor also apparently miscalculated the total of the special assessments and other fees that he conceded in his most recent memorandum. The correct amount of the pre-petition charges conceded by the Debtor is $8,993.33 and is broken down into $7,389.00 in monthly assessments, $950.00 in special assessments, $35.64 in other fees, and $618.69 in attorneys' fees and costs.

[12] The Court believes that the correct amount of post-petition attorneys' fees and costs requested by WCCA is $34,585.50 broken down into WCCA's two prior requests of $21,134.77 and $13,450.73.

[13] The Court believes that the correct amount of WCCA's total requested claims is $51,796.55 broken down into WCCA's Proof of Claim of $16,112.05, post-petition attorneys' fees and costs of $34,585.50, post-petition monthly assessments of $599.00, late charges of $450.00, and other fees of $50.00.

proposed to timely pay the full pre- and post-petition amounts due, or to provide liens of corresponding priority, to WCCA. WCCA's Second Suppl. Mem. 8. The issues raised by the Debtor and by WCCA with respect to the Debtor's Objections to WCCA's Proof of Claim are now ripe to be decided.

## III.    DISCUSSION

As explained above, the Debtor has already conceded that the following pre-petition amounts should be allowed: $7,389 in monthly assessments, $950 in special assessments, and $35.64 in other fees. The Debtor also concedes that WCCA is entitled to $618.69 in pre-petition attorneys' fees and costs related to WCCA's state court action against the Debtor, but disputes that WCCA is entitled to the remaining $6,738.72 in pre-petition attorneys' fees and costs, any portion of its post-petition attorneys' fees and costs, interest on its post-petition attorneys' fees and costs, or any of the pre-petition or post-petition late charges. The Debtor's Objections to WCCA's Proof of Claim therefore raise two primary issues: to what extent should the Court allow WCCA's (A) pre-petition claims for late charges and attorneys' fees and costs; and (B) post-petition claims for late charges, attorneys' fees and costs, and interest on such attorneys' fees and costs. The Court will address these issues in turn.

### A.    Pre-Petition Claims Under § 502(b)

A proof of claim "is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a). "If properly filed, a proof of claim is *prima facie* evidence of the validity and amount of the claim, even if an objection is filed." *In re Wells*, 463 B.R. 320, 326 (Bankr. E.D. Pa. 2011) (emphasis added) (citations omitted) (citing Fed. R. Bankr. P. 3001(f)). A *prima facie* proof of claim "satisfies the claimant's initial obligation to go forward." *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173 (3d Cir. 1992).

If a party in interest objects to a proof of claim, the Court "shall determine the amount of such claim . . . as of the date of the filing of the petition, and shall allow such claim in such amount," subject to several exceptions. 11 U.S.C. § 502(b). Upon the filing of an objection to a properly filed proof of claim, "[t]he burden of going forward then shifts [from the claimant] to the objector to produce evidence sufficient to negate the *prima facie* validity of the filed claim." *Allegheny Int'l*, 954 F.2d at 173. "[I]f such objection to a claim is made, the court . . . shall allow such claim . . . except to the extent that . . . (1) such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law." 11 U.S.C. § 502(b); *see also Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 450 (2007) (quoting *Raleigh v. Ill. Dep't of Revenue*, 530 U.S. 15, 20 (2000)) (stating that a proof of claim shall be allowed only to the extent that a claimant is entitled to such claim based upon "the underlying substantive law creating the debtor's obligation"). Furthermore, with regard to any objection to a proof of claim, "any defense to a claim that is available outside of the bankruptcy context is also available in bankruptcy." *Travelers*, 549 U.S. at 450 (citing 4 *Collier on Bankruptcy* ¶ 502.03[2][b] (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev. 2006)). "[T]he objector must produce evidence which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency." *Allegheny Int'l*, 954 F.2d at 173–74. Finally, if the objector successfully refutes the claimant's *prima facie* claims, the burden of proof shifts back to the claimant to "prove the validity of [its] claim[s] by a preponderance of the evidence." *Id.* at 174 (citing *In re WHET, Inc.*, 33 B.R. 424, 437 (Bankr. D. Mass. 1983)).

Here, WCCA properly filed its Proof of Claim under § 501 and it is *prima facie* evidence of the claims therein. Upon the filing of the Debtor's Objections, the burden of proof shifted to the Debtor to produce evidence sufficient to negate the *prima facie* validity of the Proof of

Claim. The Debtor will satisfy his burden of proof to the extent that he can demonstrate that

WCCA's pre-petition claims for late charges and attorneys' fees and costs are unenforceable

under an agreement between himself and WCCA or under applicable state law. If the Debtor

successfully refutes WCCA's *prima facie* claims, then WCCA must prove the validity of its

claim by a preponderance of the evidence. Mindful of these shifting burdens of proof, the Court

must now determine the extent to which the Proof of Claim will be allowed.

### 1.    Late Charges

WCCA attached a Financial Transaction sheet dated as of October 23, 2014 ("Sheet"), to

its Proof of Claim which sets forth, *inter alia,* a list of the pre-petition late charges charged to the

Debtor from October 17, 2006, to October 14, 2014. Claim 6-1, Claims Register. Thus, WCCA

set forth a *prima facie* claim for such pre-petition late charges in the total amount of $380.

The Debtor objects to the pre-petition late charges because (a) he is under "no contractual

obligation" to pay the late charges; (b) the late charges are so excessive as to "constitute[] an

unenforceable penalty clause"; and (c) the late charges are the product of a procedurally

unconscionable adhesion contract. Debtor's Mem. 4–5 (quoting *In re Jordan*, 91 B.R. 673, 680

(Bankr. E.D. Pa. 1988)); Debtor's Reply Mem. 2–3. For the reasons explained below, the Court

will sustain the Debtor's Objections to the pre-petition late charges because WCCA failed to

prove that the Debtor was contractually obligated to pay late charges to WCCA. In addition, by

WCCA's own admission, the Court concludes that the late charges sought to be imposed by

WCCA against the Debtor constitute unenforceable penalties.

### a.    *The Imposition of Late Charges*

At the outset, the Debtor denies that he is contractually obligated to pay the pre-petition

late charges because, pursuant to *In re Jordan*, 91 B.R. 673 (Bankr. E.D. Pa. 1988), WCCA must

have "express" and "unambiguous[]" contractual authorization to collect the late charges.
Debtor's Suppl. Mem. 3 (quoting *Jordan*, 91 B.R. at 678).

In response, WCCA argues that "the imposition of late charges by the Association is a
matter of statute and not contract" because it is authorized to impose such fees pursuant to UCA
§§ 3302(a)(11) and 3315(a). WCCA's Suppl. Mem. 2–3. Under the former, WCCA may,
"[s]ubject to the provisions of the declaration . . . (11) Impose charges for late payment of
assessments." UCA § 3302(a). Under the latter, "[u]nless the declaration otherwise provides,
fees, charges, late charges, fines and interest charged pursuant to section 3302(a)(10), (11) and
(12) . . . are enforceable as assessments under this section." *Id.* § 3315(a).

It appears that WCCA is arguing that the UCA is self-executing and that late charges may
be automatically imposed against condominium owners under UCA §§ 3302(a)(11) and 3315(a).
To the extent that WCCA makes this argument, the Court disagrees because WCCA's
interpretation of §§ 3302(a)(11) and 3315(a) contradicts their plain meaning. *See Com v. Packer*,
798 A.2d 192, 196 (Pa. 2002) (citing 1 Pa. Cons. Stat. § 1921(b); *LTV Steel Co. v. Workers'
Comp. Appeal Bd. (Mozena)*, 754 A.2d 666, 674 (Pa. 1997)) (stating that "where the intent of the
legislature is clear from the plain meaning of the statute, courts need not pursue statutory
interpretation").

The language of §§ 3302(a)(11) and 3315(a) unambiguously empowers a condominium
association to impose and enforce late charges. However, it is clear from the face of these
provisions that the terms of the imposition of any late charge must necessarily be set forth in a
condominium association's declaration or other governing document. Thus, under the clear
language of the UCA, WCCA may not impose late charges unless its Declaration or other
governing document affirmatively sets forth the terms of the imposition of such charges.

- 17 -

With regard to WCCA's Declaration, the Debtor argues that "there is no provision in any contract . . . between the parties providing for late charges." Debtor's Mem. 5. WCCA argues that a monthly late charge of $10 was automatically assessed to any member of WCCA whose account became delinquent in excess of $20.01 pursuant to the Board's Administrative Resolution #1 on March 17, 1997 ("Resolution"). WCCA's Second Suppl. Mem. 11–12; Hr'g on Obj. Claimant's Ex. 1A. In addition, WCCA argues that it subsequently increased the late charge to $25 when the monthly condominium assessment increased to $195, as evidenced in the minutes of an October 16, 2013, WCCA Board meeting. WCCA's Second Suppl. Mem. 11–12; Hr'g on Obj. Claimant's Ex. 4.

There is no provision in either WCCA's Declaration and Bylaws which explicitly permits the imposition of late charges. The burden of proof therefore shifts to WCCA to demonstrate that it is permitted to impose late charges under the Declaration or related governing documents.

The only reference to late charges in the Declaration is found in § 13.2 which states that "[a]ny fees, charges, late charges, fines and interest which may be levied by the Executive Board pursuant to 3302(a)(10), (11) and (12) of the [UCA], shall be subordinate to the lien of a Permitted Mortgage on a Unit." Declaration § 13.2. This section, alone, however, is insufficient to support WCCA's imposition of late charges against the Debtor since it fails to set forth that a late charge will actually be imposed or the terms of such late charge; it merely contemplates that, to the extent a late charge is imposed, it will be subordinate to the liens of permitted mortgagees.

The only provisions in the Declaration which could remotely support the imposition of late charges are §§ 13.5 and 14.1(b). Section 13.5 provides that "a special assessment may be levied against the Unit Owner . . . for violations of the terms and provisions of this Declaration or the Rules and Regulations promulgated by the Executive Board from time to time." *Id.* § 13.5.

Thus, under a generous reading of this provision, it is possible that WCCA could have levied a

special assessment against the Debtor in the form of a late charge for failure to timely pay his

monthly condominium assessment. However, no evidence was presented that WCCA levied a

special assessment against the Debtor in order to impose late charges.

In addition, § 14.1(b) of the Declaration, which permits WCCA's Board to adopt or

amend rules and regulations in order to remedy violations of the Declaration through appropriate

resolutions duly approved by WCCA's Board, provides:

> The Board shall have the power to adopt, amend and enforce . . . procedures and
> penalties for violations of this Declaration, the By-Laws and any rules and
> regulations adopted pursuant thereto which the Board shall deem appropriate.
> Any rules and regulations shall be adopted or amended, from time to time, by
> means of appropriate resolutions duly approved by the Board in accordance with
> the By-Laws. A copy of the rules and regulations and copies of any amendments
> thereto shall be delivered or mailed to each Owner and occupant of a Dwelling
> promptly after the adoption thereof and shall become binding upon all Owners,
> their successors in title and assigns, and occupants of Dwellings.

*Id.* § 14.1(b).

Although it is possible that WCCA's Board may have adopted the Resolution in order to

impose a monthly late charge of $10 against delinquent members pursuant to this provision,

WCCA has not provided this Court with any evidence that the Resolution was served on the

Debtor, as required by § 14.1(b) of the Declaration. In the absence of such notice, it is clear that

the Debtor could not possibly be bound by the Resolution. In addition, the Court finds that the

imposition of increased late charges of $25 is also insufficient since the Board apparently did not

even adopt a resolution in connection with such late charges and, again, WCCA failed to produce

any evidence that the Debtor was notified of any resolution adopting increased late charges.

b.    *Unenforceable Penalty Provisions*

The Court's disallowance of WCCA's pre-petition late charges is further buttressed by this Court's determination that the late charges constitute unenforceable penalties, which WCCA admitted. In opposing the late charges, the Debtor argued that they "are so excessive" that they cannot constitute liquidated damages and instead must be disallowed as "unenforceable penalt[ies]." Debtor's Suppl. Mem. 4. In response, WCCA argued that it "must provide penalties which require unit owners to timely pay assessments" because, otherwise, "unit owners will have no incentive to timely pay their assessments." WCCA's Suppl. Mem. 4.

This issue turns on whether the late charges constitute permissible liquidated damages or unenforceable penalties under Pennsylvania law. Liquidated damages are "the sum a party to a contract agrees to pay if he breaks some promise, and which, having been arrived at by a good faith effort to estimate in advance the actual damage that will probably ensue from the breach, is legally recoverable . . . if the breach occurs." *Pantuso Motors, Inc. v. CoreStates Bank*, 798 A.2d 1277, 1282 (Pa. 2002) (quoting *In re Plywood Co. of Pa.*, 425 F.2d 151, 154 (3d Cir. 1970)). In contrast, a penalty provision is not designed "as a pre-estimate of probable actual damages, but as a punishment, the threat of which is designed to prevent the breach." *Id.* (quoting *Westmount Country Club v. Kameny*, 197 A.2d 379, 382 (N.J. Super. Ct. App. Div. 1964)). "If the amount of damages assessed is subsequently adjudged unreasonable in the light of either anticipated or actual harm, the contractual provision will be voided as a penalty." *Finkle v. Gulf & W. Mfg. Co.*, 744 F.2d 1015, 1021 (3d Cir. 1984) (quoting *Unit Vending Corp. v. Tobin Enters.*, 168 A.2d 750, 751 (Pa. Super. Ct. 1961)).

In determining whether the late charges are reasonable liquidated damages assessments or unenforceable penalties, WCCA has failed to provide any evidence that they represent a good

- 20 -

faith estimate of the administrative expense that it would incur if an owner was delinquent. Rather, WCCA admits that the late charges are "penalties" imposed in order to deter owners from not timely paying their assessments. WCCA's Suppl. Mem. 4. By its own description, therefore, each late charge is "a punishment, the threat of which is designed to prevent the breach," and thus, by definition, an unenforceable penalty. *Pantuso Motors*, 798 A.2d at 1282.

Based upon the foregoing, the Court will not allow WCCA's pre-petition late charges against the Debtor. Neither the Declaration nor Bylaws permit the imposition of late charges and such charges constitute unreasonable penalties. Accordingly, the Court will sustain the Debtor's Objections with regard to the pre-petition late charges.

### 2. Attorneys' Fees and Costs

WCCA sets forth a *prima facie* claim for pre-petition attorneys' fees and costs in the amount of $7,357.41, as evidenced in the Sheet attached to WCCA's Proof of Claim. Claim 6-1, Claims Register. As explained above, the Debtor has already conceded $618.69 of such fees and costs incurred in WCCA's state court action against him. However, the Debtor objects to the remaining $6,738.72 of such fees and costs incurred largely to monitor the foreclosure proceedings on the Second Mortgage, and the sheriff's sale scheduled thereafter, prior to the 2010 Bankruptcy; to monitor the 2010 Bankruptcy; to prepare and file a proof of claim, objection to confirmation, and joinder motion therein; to appear at the confirmation/dismissal hearing therein; to monitor the subsequent foreclosure proceedings and both mortgages on the Debtor's Unit; and to collect unpaid assessments from the Debtor.

The Debtor objects to the foregoing because (a) WCCA did not incur the fees and costs as a prevailing party in an action against the Debtor; and (b) the fees and costs are unreasonable.

Debtor's Second Suppl. Mem. 5–10. For the reasons explained below, the Court will deny in part

and grant in part the Debtor's Objections as to the pre-petition attorneys' fees and costs.

*a.*     *The Declaration and Bylaws*

The Debtor cites three provisions in the Declaration and Bylaws, which "address the

circumstances under which WCCA is entitled to recover reimbursement of its attorneys fees and

costs." Debtor's Second Suppl. Mem. 4–5. First, he cites Declaration § 13.12, titled "Remedies,"

which states, in pertinent part:

> In the event of any violation of the provisions of the Act, this Declaration, the By-Laws or the Rules and Regulations of the Association by any Unit Owner . . . the Association . . . or the Executive Board . . . shall have each and all of the rights and remedies that may be provided for in the [UCA], the Declaration, the By-Laws or said Rules and Regulations, or that may be available at law or in equity, and *may prosecute an action or other proceedings against such defaulting Unit Owner* . . . . All expenses of the Executive Board *in connection with any such actions or proceedings*, including court costs and attorneys fees . . . together with interest thereon at the rate of fifteen percent (15%) per annum until paid, shall be charged to and assessed against such defaulting Unit Owner . . . .

Declaration § 13.12 (emphasis added). The Debtor argues that this provision "clearly limits

reimbursement for attorneys fees and costs from unit owners to those in connection with actions

and proceedings against a unit owner." Debtor's Second Suppl. Mem. 5. The Debtor also cites

Declaration § 14.1(c)(ii), titled "Costs and Attorneys' Fees," which states:

> In any proceeding arising because of an alleged failure of an Owner to comply with the terms of this Declaration, the By-Laws and any rules and regulations adopted pursuant thereto, *the prevailing party* shall be entitled to recover the costs of the proceeding and reasonable attorneys' fees; provided, however, that no costs or attorneys' fees may be recovered against the Board in any action unless the court shall first expressly find that the Board acted in bad faith.

Declaration § 14.1(c)(ii) (emphasis added). The Debtor argues this provision imposes the same

limits as § 13.12 and adds "the requirement that the party entitled to be reimbursed must be

'prevailing.'" Debtor's Second Suppl. Mem. 5.

- 22 -

In addition, he cites Bylaws § 10.1.2, also titled "Costs and Attorney's Fees," which states: "In any proceedings arising out of any alleged default by an Owner, the prevailing party shall be entitled to recover the costs of such proceeding and such reasonable attorney's fees as may be determined by the court." Bylaws § 10.1.2. He argues that § 10.1.2 adds a final requirement: "that the entitlement to reimbursement be 'determined' by a court." Debtor's Second Suppl. Mem. 5.

The Debtor alleges that the foregoing provisions "were drafted solely by WCCA" and therefore "must be construed strictly against [it]." *Id.* at 7. The Debtor argues that the provisions should restrict recoverable attorneys' fees and costs "to those determined by a trial court to be due to WCCA [for] services performed in connection with actions and proceedings initiated by WCCA in which it has been judicially determined to have been the prevailing party." *Id.* at 6; *see also id.* at 7 (stating that "WCCA was empowered to draft these documents more broadly and expressly include the services for which it seeks fee-reversal . . . and chose not to do so"). The Debtor therefore requests that the Court disallow the remaining pre-petition attorneys' fees and costs because WCCA was never "determined by any court to be entitled to costs and attorneys fees as a prevailing party in any action brought against the Debtor." *Id.* at 6.

In response, WCCA argues that, in addition to the attorneys' fees and costs described by the Debtor, it is also entitled to the amounts set forth in Declaration § 13.8, titled "Interest and Charges," which states, in pertinent part:

> Any delinquent owner shall also be obligated to pay (i) all expenses of the Executive Board, including reasonable attorney's fees incurred in the collection of the delinquent assessment by legal proceedings or otherwise, and (ii) *any amounts paid by the Executive Board* for taxes or on account of superior liens *or otherwise to protect its lien*, which expenses and amounts, together with accrued interest, shall be deemed to constitute part of the delinquent assessment and shall be collectible as such . . . .

- 23 -

Declaration § 13.8 (emphasis added). WCCA argues that § 13.8 "plainly sets forth Debtor's

obligation to pay the Association's expenses to protect its lien" and that the remaining pre-

petition attorneys' fees and costs may be allowed thereunder. WCCA's Second Suppl. Mem. 6.

The Court concludes that WCCA correctly interprets § 13.8. As explained above, WCCA

has liens on the Debtor's Unit for the delinquent assessments pursuant to UCA § 3315(a) and

Declaration § 13.12. Section 13.8 plainly obligates the Debtor to pay any amounts that WCCA

expends to protect such liens, which would include attorneys' fees and costs. Such amounts are

not limited thereunder to those expended in actions or proceedings filed by WCCA directly

against the Debtor, and therefore are distinguishable from the amounts allowed under §§ 13.12

and 14.1(c)(ii) of the Declaration and § 10.1.2 of the Bylaws. *See* Declaration § 13.12 (stating

that WCCA and the Board "shall have each and all of the rights and remedies that may be

provided for in the [UCA], the Declaration, the By-Laws or said Rules and Regulations, or that

may be available at law or in equity, *and* may prosecute an action or other proceedings against

such defaulting Unit Owner") (emphasis added); *id.* § 14.1(c) (stating that WCCA is entitled "to

the remedies provided in this Declaration, and also to the following relief, *none of which shall be*

*exclusive of any other remedies*") (emphasis added); Bylaws § 10.1 (stating that "*[i]n addition to*

*the remedies provided in the [UCA] and the Declaration*, a default by an Owner shall entitle the

Association, acting through its Executive Board to the following relief") (emphasis added).

    *b.*    *Reasonable Attorneys' Fees and Costs*

If WCCA's remaining pre-petition fees and costs are reasonable, they will be allowed as

part of its Proof of Claim. Whether pre-petition attorneys' fees and costs are reasonable is

determined according to applicable nonbankruptcy law. *See Travelers Cas. & Sur. Co. of Am. v.*

*Pac. Gas & Elec. Co.*, 549 U.S. 443, 450 (2007) (citing *Raleigh v. Ill. Dep't of Revenue*, 530

U.S. 15, 20 (2000)) (stating that bankruptcy courts should "consult state law in determining the

validity of most claims" under § 501(b)(1)). The Pennsylvania Supreme Court has instructed that

the following factors apply:

> the amount of work performed; the character of the services rendered; the
> difficulty of the problems involved; the importance of the litigation; the amount of
> money or value of the property in question; the degree of responsibility incurred;
> whether the fund involved was 'created' by the attorney; the professional skill and
> standing of the attorney in his profession; the results he was able to obtain; the
> ability of the client to pay a reasonable fee for the services rendered; and, very
> importantly, the amount of money or the value of the property in question.

*In re LaRocca's Tr. Estate*, 246 A.2d 337, 339 (Pa. 1968).[14]

The Debtor's only line item objections to the pre-petition fees and costs were set forth in

his first memorandum. Therein, he asserted that Mr. Manochi committed a mathematical error

when he calculated the fees and costs listed in Invoice 2989. Although the Debtor asserted that

the error inflated the pre-petition fees and costs by $60.50, Mr. Manochi conceded that the error

inflated the fees and costs by $78.00. Debtor's Suppl. Mem. Ex. A; Debtor's Mem. 7. The

Debtor asserted that Mr. Manochi committed additional mathematical errors, which, including

the aforementioned concession, inflated the pre-petition fees and costs by a total of $468.75.

Debtor's Suppl. Mem. Ex. A; Debtor's Mem. 7. However, Mr. Manochi did not concede, and the

Court's calculations do not reveal, such errors. The Court will therefore reduce WCCA's Proof

of Claim in the amount of Mr. Manochi's concession of $78.00.

In addition, the Court's calculations revealed an error not asserted by the Debtor with

respect to Invoice 3203. As reflected in the Sheet, the portion of that invoice that was charged to

---

[14] *See also Arches Condo. Ass'n v. Robinson*, 131 A.3d 122, 131–32 (Pa. Commw. Ct. 2015) (stating that
the trial court should have applied such factors to determine whether the fees and costs that a condominium
association's executive board incurred to collect delinquent assessments were reasonable, but that it may be
sufficient to consider only "factors such as the nature and length of the litigation, the responsibilities of the parties in
affecting the nature and length of the litigation, and the competitiveness of the rate and time expended").

the Debtor on August 6, 2012, was in the amount of $869.64. However, as reflected in the pre-petition bills, that portion of the invoice was billed to WCCA in the amount of $526.50, which is $343.14 less than the amount charged to the Debtor. Hr'g on Obj. Claimant's Ex. 4. The Court will therefore reduce WCCA's Proof of Claim by an additional $343.14.

As stated above, the Court ordered the Debtor to submit additional line item objections following the conclusion of the hearing on his Objections. Although the Debtor purported to comply with the Court's order, he asserted only *general* objections to WCCA's attorneys' fees and costs, not *line item* objections. Moreover, his objections were confined to a single paragraph in which he concluded that "[a] further line-by-line analysis could be undertaken, but only with considerable time-expenditures, which should be unnecessary because the entire sum of amounts allowed to WCCA are likely to be ultimately classified as unsecured and hence payable in very small part, or disallowed entirely." Debtor's Second Suppl. Mem. 9–10. Accordingly, the Debtor asserted only two further objections to the remaining pre-petition fees and costs.

First, the Debtor denied that "most of Mr. Toll's services for monitoring the foreclosure action brought by the Debtor's first mortgagee . . . were necessary." *Id.* at 9. As explained above, CitiMortgage holds the First Mortgage on the Debtor's Unit and maintained foreclosure proceedings thereupon after the Debtor's 2010 Bankruptcy. If CitiMortgage had obtained a foreclosure judgment and conducted a sheriff's sale, then WCCA would have risked the complete divestment of its liens for unpaid assessments due more than six months before the sale. UCA § 3315(b)(2). Therefore, these services were reasonably incurred to protect WCCA's liens under Declaration § 13.8.

Second, the Debtor denied that "Mr. Manochi's services for monitoring the Debtor's first bankruptcy were necessary." Debtor's Second Suppl. Mem. 9. As explained above, the 2010

- 26 -

Bankruptcy commenced on December 29, 2010. Therein, WCCA filed a proof of claim for delinquent assessments; objections to confirmation to compel priority payment of pre- and post-petition arrears; and a motion to join the Trustee's motion to dismiss the bankruptcy because of the nonpayment of post-petition arrears. Mr. Toll prepared the proof of claim and Mr. Manochi prepared the objections and joinder motion. Such services were reasonably incurred to protect WCCA's liens in the Unit and to ensure that the Debtor did not discharge WCCA's claims in the 2010 Bankruptcy under Declaration §§ 13.12 and 14.1(c)(ii) and Bylaws § 6.1.2.

The Debtor's additional general objections to the remaining pre-petition attorneys' fees and costs therefore did not reveal any unreasonable or unauthorized fees or costs. The Court's line-by-line analysis of the pre-petition bills, however, did discover one unauthorized charge. There is a single entry in Invoice 3203 on January 20, 2012, that does not appear to pertain to services incurred in pursuit of this or related matters. It reads: "Telephone with Cathy P. (fr) w/ question re access to Milbourne to check water - see file memo dictated; question re getting needed proxies for approval of Declaration - I will review & advise." Hr'g on Obj. Claimant's Ex. 4. The Court will therefore reduce WCCA's Proof of Claim in the amount of such charge: $117.00.

The sum of the foregoing reductions for mathematical errors and unreasonable or unauthorized charges is $538.14. After subtracting this amount from WCCA's request for pre-petition attorneys' fees and costs of $7,357.41, the Court concludes that WCCA holds a total allowed pre-petition claim for attorneys' fees and costs equal to $6,819.27.

This amount is eminently reasonable in light of the fact that it represents less than twenty-eight hours of legal services provided over more than four years to recover the Debtor's delinquent assessments and protect WCCA's liens arising therefrom. Through those services,

Mr. Toll and Mr. Manochi monitored multiple foreclosure proceedings, preserved their client's

claims in bankruptcy, and managed the collection of the Debtor's account. Moreover, the vast

majority of the pre-petition fees and costs were billed by Mr. Toll, whose testimony was

particularly credible and whose rate was more than reasonable, especially in light of his vast

experience and credentials, which the Debtor did not challenge. Finally, the Debtor could have

prevented the incursion of all or most of such fees and costs had he timely paid the delinquent

assessments, or cured the delinquencies in a reasonable timeframe, rather than allow them to

accumulate over the four years preceding this bankruptcy.

Based upon the foregoing, the Court concludes that WCCA holds an allowed pre-petition

secured claim in the amount of $15,193.91, which represents the following allowed pre-petition

amounts: $7,389 in monthly assessments, $950 in special assessments, $35.64 in fees, and

$6,819.27 in attorneys' fees and costs.

### B.    Post-Petition Claims Under § 506(b)

As just discussed, WCCA holds an allowed pre-petition secured claim equal to

$15,193.91 ("Secured Claim") under § 502. WCCA has also requested an award for post-petition

late charges, interest and attorneys' fees.[15] In order to determine whether WCCA is entitled to

add post-petition claims to its Secured Claim, the Court looks to § 506(b) which provides:

> To the extent that an allowed secured claim is secured by property the value of
> which . . . is greater than the amount of such claim, there shall be allowed to the
> holder of such claim, interest on such claim, and any reasonable fees, costs, or
> charges provided for under the agreement or State statute under which such claim
> arose.

---

[15] As discussed below, the Debtor is only entitled to post-petition late charges under § 506(b) if a
Pennsylvania statute, or an agreement between the Debtor and WCCA, authorizes such charges. Since the Court has
already determined that no statute or agreement exists which permits WCCA to impose late charges, the Court will
deny WCCA's request for post-petition late charges.

11 U.S.C. § 506(b). Section 506(b) therefore "allows oversecured creditors to add reasonable post-petition, pre-confirmation attorney fees, interest, and costs to the amount of their secured claim" to the extent of the value of the underlying collateral.[16] *In re Joubert*, 411 F.3d 452, 454 (3d Cir. 2005); *see also In re Nunez*, 317 B.R. 666, 670 (Bankr. E.D. Pa. 2004) (stating that "section 506(b) applies only to post-petition interest, fees and costs sought in a secured creditor's proof of claim" and that "[t]he 'allowability' of pre-petition claims is governed by section 502 and not by section 506(b)"); 4 *Collier on Bankruptcy* ¶ 506.04[1] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2013) (stating that "[t]he allowability of . . . prepetition amounts as part of the secured creditor's 'claim' is not determined by section 506, but is governed by section 502 in conjunction with other provisions of the Code").

By the terms of § 506(b), however, the oversecured creditor's ability to add reasonable post-petition attorney fees to its secured claim is capped by the value of such creditor's underlying collateral. To the extent that an oversecured creditor's reasonable post-petition attorney fees exceed the value of its collateral, such excess portion is disallowed in its entirety. *See United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 372 (1988) (addressing the right to recover post-petition interest under § 506(b) and holding that § 506(b) has the "substantive effect of denying undersecured creditors postpetition interest on their claims—just as it denies over secured creditors postpetition interest to the extent that such

---

[16] The Debtor argues that WCCA's post-petition attorney's fees and costs can only be allowed by this Court as an administrative expense under § 503(b) and that WCCA has not demonstrated that it is entitled to an administrative claim thereunder. Debtor's Second Suppl. Mem. 1. Although the Court agrees that WCCA's post-petition attorneys' claims do not qualify as administrative expenses under § 503(b), they may be allowed under § 506(b) to the extent of the value of the underlying collateral, subject to this Court's determination that such fees are reasonable.

interest, when added to the principal amount of the claim, will exceed the value of the collateral").[17]

### C.    Calculation of WCCA's Post-Petition Claims Under § 506(b)

The Court has determined that the Unit has a value of $263,000.00.[18] The Court has also calculated that the total secured claims against the Unit equal $232,278.26.[19] Based upon the foregoing, the Court concludes that there is an equity cushion in the Unit equal to $30,721.74 ("Equity Cushion") and, therefore, that WCCA is an oversecured creditor.[20] At the outset, the

---

[17] See also Tribune Media Co., No. 08-13141 (KJC), 2015 WL 7307305, at *3 (Bankr. D. Del. Nov. 19, 2015) (quoting In re Glob. Indus. Techs., Inc., 327 B.R. 230, 239–40 (Bankr. W.D. Pa. 2005)) (stating that "post-petition interest, attorney's fees and costs are recoverable only by oversecured creditors" because (1) "unsecured creditors have no clear entitlement to postpetition attorneys' fees" in the Bankruptcy Code; (2) the United States Supreme Court "permitted only oversecured creditors to recover postpetition interest" under § 506(b) in Timbers; (3) claims are determined "as of the date the petition was filed" under § 502(b), and then post-petition claims are added "to the extent a creditor is oversecured" under § 506(b); and (4) "it is inequitable to allow certain unsecured creditors to recover postpetition attorney's fees at the expense of similarly situated claimants"), mot. to certify appeal granted sub nom. In re Tribune Media Co., C.A. No. 15-1116-GMS, 2016 WL 1451161 (D. Del. Apr. 12, 2016); In re Plymouth House Health Care Ctr., No. 03-19135, 2005 WL 2589201, at *5 (Bankr. E.D. Pa. Mar. 15, 2005) (stating that "an unsecured creditor or an undersecured creditor is not entitled to recover postpetition fees and costs arising from his claim"); Glob. Indus. Techs., 327 B.R. at 239 (agreeing "with the majority of courts that unsecured creditors may not include postpetition attorneys' fees in their claims from a bankruptcy estate") (footnote omitted); In re Loewen Grp. Int'l, Inc., 274 B.R. 427, 444 (Bankr. D. Del. 2002) (stating that "post-petition fees and costs may only be recovered by creditors to the extent their claims are oversecured"). But see Collier, supra, ¶ 502.03[2][b] (stating that "the trend seems to be moving towards courts allowing" unsecured claims for post-petition attorneys' fees "where permitted by state law or contractual agreement").

[18] The Debtor has not provided any evidence regarding the value of the Unit. WCCA submitted an Appraisal of the Unit in the Adversary Proceeding filed by the Debtor against WCCA, which listed the value as $263,000. In the absence of any evidence from the Debtor regarding the value of the Unit and for the purpose of determining whether WCCA is oversecured, the Court will adopt the value of the Unit listed in the Appraisal of $263,000. To the extent that the Debtor contests the value of the Unit, he may file a timely motion for reconsideration of the Order that will accompany this Opinion. At the hearing on the motion for reconsideration ("Hearing"), the Debtor may present testimony by the Debtor, and/or an appraiser, of the value of the Unit provided that the Debtor gives a copy of any appraisal used by the Debtor at the Hearing to WCCA at least one week before the Hearing.

[19] The Court determined the total amount of secured claims against the Unit by adding the allowed secured claim of the First Mortgage in the amount of $217,084.35 to WCCA's allowed secured claim of $15,193.91. Although the Debtor has alleged that "it has recently come to light" that his Unit "has a second mortgage of approximately $100,000 against it," it is clear that Wells Fargo's Second Mortgage on the Unit was satisfied on January 3, 2013. Debtor's Second Suppl. Mem. 7; WCCA's Second Suppl. Mem. Ex. A.

[20] "When the value of the collateral exceeds the amount of the claim, the creditor is 'oversecured.'" In re Ryker, No. 06-1872, 2007 WL 2138590, at *3 n.6 (3d Cir. July 27, 2007).

Court will focus on WCCA's request for post-petition attorneys' fees and costs. Accordingly, the Court will add WCCA's reasonable post-petition attorneys' fees and costs, if any, to WCCA's Secured Claim to the extent of the Equity Cushion. If the Court determines that WCCA's reasonable post-petition attorneys' fees and costs exceed the Equity Cushion, the Court will disallow such excess portion in its entirety and will not consider WCCA's request for interest on the post-petition attorneys' fees and costs.

Under § 506(b), post-petition attorney's fees may be allowed "if three elements are satisfied: (1) the claim is an oversecured, allowed secured claim; (2) the fees are reasonable; and (3) the fees are provided for under the agreement between the parties or by statute." *In re Gordon-Brown*, 340 B.R. 751, 757 (Bankr. E.D. Pa. 2006); *accord In re Nunez*, 317 B.R. at 668 (stating the same); *Collier*, *supra*, ¶ 506.04[3] (stating the same). However, unlike pre-petition fees and costs, whether post-petition fees and costs are reasonable under § 506(b) is determined according to "federal standards." *Collier*, *supra*, ¶ 506.04[3][d]; *see also In re Ryker*, No. 06-1872, 2007 WL 2138590, at *4 (3d Cir. July 27, 2007) (citing *In re A & P Diversified Techs. Realty, Inc.*, 467 F.3d 337, 341 (3d Cir. 2006)) (stating that § 506(b) "governs the reasonableness of . . . attorneys' fees, irrespective of conflicting state law" and "preempts conflicting state law regarding attorneys' fees")).

Under federal law, the lodestar approach controls whether post-petition attorneys' fees and costs are reasonably incurred. *See Gordon-Brown*, 340 B.R. at 757. Pursuant to the lodestar approach, the Court will inquire "into the hours spent by the attorneys." *Lindy Bros. Builders, Inc. of Phila. v. Am. Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 167 (3d Cir. 1973).[21]

---

[21] Ordinarily, the Court would also "fix a reasonable hourly rate" for the services provided by the attorneys, considering their "legal reputation and status." *Lindy Bros.*, 487 F.2d at 167. However, WCCA correctly observes

The Court need not examine "the exact number of minutes spent nor the precise activity to which each hour was devoted nor the specific attainments of each attorney" as long as it can determine "the hours devoted to various general activities, e.g., pretrial discovery, settlement negotiations," etc. *Id.*

Accordingly, WCCA's post-petition fees and costs will be allowed to the extent that they were reasonably incurred and authorized under the Declaration and the Bylaws. WCCA has incurred post-petition attorneys' fees and costs totaling at least $34,585.50. Hr'g on Obj. Claimant's Exs. 5, 10–11. WCCA incurred such fees and costs largely to prepare and file its Proof of Claim, motion to compel the payment of its post-petition fees and assessments, praecipe to withdraw the same, memorandums in opposition to the Debtor's Objections, and objections to the confirmation of eight of the Debtor's ten Chapter 13 plans in this bankruptcy; to prepare and file an answer, expert appraisal report, and response to the Debtor's voluntary motion to dismiss, in the Adversary Proceeding; and to collect unpaid assessments from the Debtor and respond to his lump sum payment proposals.

Just like with WCCA's pre-petition attorneys' fees and costs, the Debtor argues that these fees and costs are not authorized under the Declaration and Bylaws. However, these arguments fail for the same reasons discussed above—namely, Declaration § 13.8 permits WCCA to incur attorneys' fees and costs to protect its lien against the Unit.

---

that the "Debtor does not challenge the skill, expertise or hourly rates charged by either Mr. Toll or [Mr. Manochi]." WCCA's Second Suppl. Mem. 7. The Court therefore will not conduct such an inquiry.

The Debtor also lists several "specific services" that he believes were unreasonably billed to him.[22] Debtor's Second Suppl. Mem. 9. However, the Debtor's arguments as to these services fail, as explained below.

### Excessive Consultations

First, the Debtor denies that "the numerous consultations between Mr. Toll and Mr. Manochi" were necessary. *Id.* at 10. As a general principle, however, the Court finds that it was necessary for Mr. Toll and Mr. Manochi to occasionally consult each other in order to competently represent WCCA. The Court will therefore reduce WCCA's post-petition claims only if, and to the extent that, a line-by-line analysis of its post-petition bills reveals that its attorneys excessively consulted with each other.

### Defending the Adversary Proceeding

Second, the Debtor denies that it was necessary to defend against his Adversary Proceeding if Mr. Manochi knew of, but failed to disclose, Wells Fargo's Second Mortgage on the Debtor's unit. *Id.* at 9–10. The Debtor argues that, under such circumstances, Mr. Manochi "should have gracefully conceded that the claim of WCCA was in fact totally unsecured and stipulated to the relief sought." *Id.* at 10. As explained above, however, the Second Mortgage

---

[22] The Debtor further argues that "[n]o more than" $3,000 should have been billed for the post-petition legal services provided before the hearing on November 11, 2015, and that "[n]o more than" $1,000 should have been billed for the legal services provided in opposition to Debtor's voluntary dismissal of the Adversary Proceeding. Debtor's Second Suppl. Mem. 10. However, the Court cannot evaluate whether the precise figures quoted by the Debtor fairly represent the only fees and costs that should have been billed for such legal services because he has not provided line item objections thereto.

The Debtor also argues that, to the extent that WCCA's post-petition attorneys' fees and costs are unauthorized under the parties' agreements, they may be allowed only "in extraordinary situations, such as where legally unjustifiable conduct of a party or counsel for a party is established, or where the debtor requests some extraordinary dispensation." Debtor's Mem. 6–7 (quoting *In re Nickleberry*, 76 B.R. 413, 424 (Bankr. E.D. Pa. 1987)). The Debtor therefore denies that the post-petition fees and costs may be allowed because "[t]here are no such circumstances here on the part of the Debtor or his counsel." *Id.* However, as the Court will explain below, all of WCCA's post-petition fees and costs were authorized under the Declaration and the Bylaws.

was satisfied on January 3, 2013. WCCA's Second Suppl. Mem. Ex. A. It was therefore entirely

reasonable to defend against the Adversary Proceeding because, if it did not, WCCA might have

lost "all of its security interest in Debtor's Property and quite possibly [its] right to collect any pre- or

post-petition amounts due from Debtor." *Id.* at 7–8.

### Dismissing the Adversary Proceeding

Third, the Debtor denies that WCCA's opposition to his "attempts to voluntarily dismiss

the initial adversary proceeding" was necessary and asserts that WCCA should have executed a

"Stipulation of Dismissal." Debtor's Second Suppl. Mem. 10. However, WCCA reasonably

devoted "significant time and expense" to prepare its Appraisal of the Debtor's Unit in the

Adversary Proceeding. Def.'s Resp. ¶ 13. And the Debtor tacitly endorsed WCCA's Appraisal

when he admitted that the primary reason that he moved to dismiss the Adversary Proceeding

was his "subsequent review of . . . evidence of the value of the residence." Pl.'s Mot. to Dismiss

¶ 4. WCCA did not act unreasonably, therefore, when it incurred time trying to obtain the

Debtor's consent to the value of the Unit since WCCA was trying to avoid the "additional time

and expense" necessary to re-litigate the Unit's value in the lead bankruptcy case. Def.'s Resp.

¶ 13. Thus, WCCA reasonably opposed dismissal of the Adversary Proceeding in an attempt to

secure the full value of its efforts to determine the value of the Unit therein.

### Objections to Confirmation

Fourth, the Debtor denies that WCCA's "voluminous" objections to the confirmation of

the Debtor's Chapter 13 plans were necessary because the plans "could not have been

confirmed." Debtor's Second Suppl. Mem. 10. According to the Debtor, confirmation of his

Chapter 13 plans would have been denied, even if WCCA did not object, because of "[t]he

presence of other, larger creditors of the Debtor whose claims were not totally satisfactorily treated." Debtor's Mem. 1.

The foregoing argument is absurd. In the event of a unit owner's failure to timely pay assessments, WCCA and the Board are plainly entitled to "each and all of the rights and remedies that may be provided for in the [UCA], the Declaration, the By-Laws or said Rules and Regulations, or that may be available at law or in equity." Declaration § 13.12. WCCA was not obligated, and it would not have been wise for WCCA, to entrust the protection of its rights and remedies to the Debtor's other creditors, the Trustee, or the Court merely to consolidate the objections filed in this bankruptcy:

> In none of the plans did Debtor agree to pay the amounts Debtor owed as set forth in WCCA's proof of claim or the post-petition amounts due WCCA at the time of confirmation. In none of these plans did Debtor acknowledge WCCA's lien rights in these amounts or agree to pay post-confirmation Association assessments. These failures required WCCA to object to the plans. Had the Association not timely objected, and any one of the [ten] plans been confirmed, the Association and its Board members would have been subjected to possible legal claims from the paying unit owners that the Association was not properly protecting their interests.

WCCA's Second Suppl. Mem. 8. Moreover, such entrustment could have possibly exposed its counsel to punishment for violations of the rules of professional conduct. The Court therefore will deny the Debtor's Objections.

*Unsecured Creditors and Excessive Undertakings*

The Debtor finally argues that WCCA's post-petition fees and costs as a whole are unreasonable for two reasons. According to the Debtor, (1) his "limited financial resources . . . should not be exhausted by one creditor" to the detriment of his other creditors; and (2) WCCA's "excessive undertakings . . . do not exhibit the spirit of economy that might be expected from a creditor actually concerned about saving costs to its members." Debtor's Second Suppl. Mem.

8–9; Debtor's Reply Mem. 3. The Debtor therefore requests that the Court allow no more than 10% of WCCA's post-petition fees and costs. Debtor's Second Suppl. Mem. 9.

In response, WCCA argues that all of the legal actions it has taken during the Debtor's bankruptcy proceeding were necessary to ensure that the Debtor pays WCCA what it is owed. WCCA's Second Suppl. Mem. 9. WCCA alleges that if it had forfeited the amounts it was owed, then other, nondefaulting unit owners would have borne the resulting burden. WCCA's Suppl. Mem. 7–8. Such a result, WCCA concludes, "would not only be unfair to the other unit owners, it would pervert justice." *Id.* WCCA concludes that it is therefore "entitled to the full amount of its attorneys' fees and costs even if those fees and costs are disproportionate to the non-attorneys' fees assessments [it] seeks." WCCA's Second Suppl. Mem. 9–10 (citing *Arches Condo. Ass'n v. Robinson*, 131 A.3d 122 (Pa. Commw. Ct. 2015); *Latch's Lane Owners Ass'n v. Bazargani*, No. 2408 C.D. 2009, 2010 WL 9516204 (Pa. Commw. Ct. Apr. 13, 2010); *Mountain View Condo. Ass'n v. Bomersbach*, 734 A.2d 468 (Pa. Commw. Ct. 1999)).

The Court agrees with WCCA. First, although the Debtor has incurred attorneys' fees on account of its legal battle with WCCA in this proceeding, and although the amount that the Debtor may use to pay such fees might otherwise have been available to pay the Debtor's unsecured creditors, WCCA is clearly entitled to take reasonable action in order to enforce its liens to the full extent of its claims. Such advantages enjoyed by secured creditors are inherent in the basic structure of the Bankruptcy Code. *See* 11 U.S.C. §§ 502–03, 506–07 (setting forth the rules governing secured and unsecured claims).

Second, as WCCA observed, it is not unprecedented to award attorneys' fees and costs to condominium associations in excess of the amounts for which such fees and costs were incurred

- 36 -

Case 14-16411-amc    Doc 135    Filed 09/07/16    Entered 09/07/16 16:41:20    Desc Main
Document    Page 37 of 39

to recover.[23] Contrary to the Debtor's criticism of its "spirit of economy," such cases clarify that WCCA may "stand on princip[le]" and "pursue its legally correct position." *E.g.*, *Mountain View*, 734 A.2d at 471. As a result, WCCA was permitted to incur whatever reasonable attorneys' fees and costs were necessary in order to protect and enforce all of its rights, and its lien against the Unit, under the Declaration and applicable state law.

Finally, the Debtor's actions in this bankruptcy proceeding demonstrate that he is substantially responsible for the inflated fees and costs to which he objects. The Debtor has consistently failed to file plans that proposed to grant liens to secure the delinquent pre-petition assessments, or to pay post-petition assessments, to WCCA. Instead, he filed numerous plans that he admitted "could not have been confirmed." Debtor's Second Suppl. Mem. 10. As WCCA observed, the Debtor therefore "plainly controlled the nature and length of the litigation" that produced the claims to which he now objects. WCCA Second Suppl. Mem. 9. In addition, the Debtor has acknowledged that, although he repeatedly stated in his plans that he was current on all monthly post-petition assessments to WCCA, those statements were not true. Through the Declaration and the Bylaws, the Debtor clearly was on notice of the risk posed by his refusal to pay monthly post-petition assessments and by proposing plans that he admits were patently unconfirmable and failed to protect WCCA's lien in the Unit: that he would be liable to pay the resulting attorneys' fees and costs incurred by WCCA to protect its interests. He will now be held responsible for his actions.

---

[23] *See Arches*, 131 A.3d at 125 (upholding a judgment of $27,355.68, including $26,206.68 of attorneys' fees and costs to collect unpaid fees and assessments); *Latch's Lane*, 2010 WL 9516204, at *4–5 (upholding a judgment of $18,000, including $17,297.71 of attorneys' fees and costs to collect unpaid late fees); *Mountain View*, 734 A.2d at 469 (upholding a judgment of $46,548.64 of attorneys' fees and costs to collect prior fees and costs for unpaid assessments). Although federal law controls the reasonableness of attorneys' fees under § 506, the policies articulated in these cases are pervasive.

*The Court's Line-by-Line Analysis*

As explained above, the Debtor's objections to WCCA's post-petition claims for attorneys' fees and costs did not reveal any unreasonable or unauthorized charges. Although the Court conducted a line-by-line analysis of WCCA's post-petition bills, the Court discovered only one error not asserted by the Debtor. WCCA claimed $4,602.00 of fees and costs related to services performed by Mr. Manochi from December 2015 to January 2016. Hr'g on Obj. Claimant's Ex. 11. However, the sum of the bills therefor is only $4,542.25. *Id.* The Court will therefore reduce WCCA's post-petition attorneys' fees and costs by the amount of such error: $59.75.

Based upon the foregoing, WCCA has incurred reasonable post-petition attorneys' fees and costs totaling $34,525.75. As explained above, however, the Court will only allow WCCA's reasonable post-petition attorneys' fees and costs to the extent of the Equity Cushion which is equal to $30,721.74. Thus, the Court will limit the award of WCCA's reasonable post-petition attorneys' fees and costs under § 506(b) to $30,721.74. Finally, WCCA's request for the remainder of its post-petition attorneys' fees and costs and interest on its post-petition attorneys' fees and costs will be disallowed because they exceed the Equity Cushion in the Unit.

## IV.    CONCLUSION

For the foregoing reasons, the Debtor's Objections to WCCA's Proof of Claim will be sustained in part and denied in part. The Court concludes that WCCA holds an allowed pre-petition secured claim of $15,193.91 pursuant to § 502 and that WCCA holds an additional secured claim of $30,721.74 as an oversecured creditor pursuant to § 506(b) on account of reasonable post-petition attorneys' fees and costs. The Court concludes therefore that WCCA holds a total allowed secured claim against the Debtor equal to $45,915.65.

An appropriate order follows.